UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

CAROLINE VIK,                                         :
                                                     :
                         Plaintiff,                  :
                                                     :
           v.                                        :          25-CV-1162 (SFR)
                                                     :
DEUTSCHE BANK AG,                                    :
                                                     :
                         Defendant.                  :
---------------------------------------------------------------- x

## MEMORANDUM & ORDER

Plaintiff Caroline Vik ("Ms. Vik") asks this Court to enter an anti-suit injunction that restrains Defendant Deutsche Bank AG ("DBAG") from pursuing a case against her in Norway (the "Norway Action"). The Norway Action is scheduled to proceed to trial in January 2026 against both Ms. Vik and her father, Alexander Vik ("Mr. Vik"). Ms. Vik asserts that this extraordinary relief is necessary to protect a judgment that was entered in favor of Mr. Vik by the Connecticut Superior Court and affirmed by the Connecticut Supreme Court. According to Ms. Vik, I should issue an injunction because "DBAG needs to be stopped from thumbing its nose at the Connecticut courts by attempting to obtain a different result in a foreign jurisdiction." ECF No. 34-1, at 1. But parallel to the present federal action, Ms. Vik and Mr. Vik are asking the Connecticut Superior Court to protect its own judgment by enjoining DBAG from pursuing the Norway Action against them both. The Connecticut Superior Court has scheduled a hearing on this request for November 13, 2025.

Ms. Vik acknowledges that the Connecticut Superior Court case will be pursued regardless of how I rule because Mr. Vik is not a party to this federal action. Neither Ms. Vik nor DBAG has claimed that federal courts have some unique authority with respect to anti-suit

injunctions that Connecticut courts lack. For the reasons explained below, in light of the exceptional circumstances presented by this action, I abstain from considering Ms. Vik's request for an anti-suit injunction pursuant to the abstention doctrine articulated by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). I stay the present federal action so that the Connecticut Superior Court may determine in the first instance whether an anti-suit injunction is appropriate.

## I.     BACKGROUND

### A.     Factual Background

I draw the following undisputed facts from the Amended Complaint, ECF No. 33, and from the comprehensive account of the events giving rise to this action as recounted by the Connecticut Superior Court and the Connecticut Supreme Court in their prior cases with these parties.[1] Where relevant, I draw also from the exhibits filed by the parties detailing the status of the Norway Action.

In the years leading up to the financial crisis in 2008, Mr. Vik, through his company Sebastian Holdings, Inc. ("SHI"), "engaged in highly lucrative and risky derivative trading in foreign currency exchanges in which DBAG acted as SHI's intermediary and prime broker." *Deutsche Bank AG v. Sebastian Holdings, Inc*., No. X08FSTCV135014167S, 2021 WL 4482154, at *1 (Conn. Super. Ct. Sept. 7, 2021) ("*Connecticut I*"). In October 2008, SHI made thirteen transfers of assets ("October Transfers"). *Id.* at *10. Eight were drawn from SHI's

---

[1] The decisions reached by the Connecticut state courts were filed as exhibits to the original Complaint and certified copies of the Superior Court decisions were filed as exhibits on November 4, 2025. Super. Ct. Mem. of Decision, Sept. 7, 2021, ECF No. 50; Super. Ct. Am. Mem. of Decision on Defs.' Mot. for Summ. J., Apr. 30, 2025, ECF No. 51. I cite to the reported decisions rather than the exhibits filed by Ms. Vik.

accounts with DBAG and totaled $297 million. *Id.* In addition, Mr. Vik directed DBAG to transfer shares of a Norwegian software company, Confirmit, in SHI's account at DBAG to SHI's account at Den Norske Bank. *Id.* Mr. Vik later transferred the Confirmit shares to himself. *Id.*

After a series of margin call payments and transfers of assets, SHI's accounts at DBAG and other banks by the end of October 2008 "had been reduced to nominal amounts, so that SHI was effectively judgment proof." *Id.* at *16. In 2009, DBAG sued SHI in the Queen's Bench Division of the High Court of Justice of England and Wales for breach of contract based on an unpaid margin call. *Id.* at *1. Following a bench trial, the English court in November 2013 awarded DBAG a judgment of more than $243 million plus interest against SHI ("English Judgment"). *Id.* No member of the Vik family was a party to the case in England. Am. Compl. ¶ 4.

### 1.    *Connecticut I*

In litigation the parties call "*Connecticut I*," DBAG filed an action in December 2013 in Connecticut to "pierce SHI's corporate veil to recover the amount of the English Judgment from [Alexander Vik] personally." *Connecticut I*, 2021 WL 4482154, at *1. After a bench trial, the Connecticut Superior Court (the Honorable Charles T. Lee) in 2021 declined to pierce SHI's corporate veil after concluding that "DBAG has not satisfied its burden of proof that, in making the October Transfers, Mr. Vik acted with the specific intent of depriving SHI of its

ability to satisfy its margin calls to DBAG." *Id.* at *31.[2] DBAG appealed, and the Connecticut Supreme Court affirmed the Superior Court's decision in 2023. *Deutsche Bank AG v. Sebastian Holdings, Inc.*, 346 Conn. 564, 594 (2023) ("The trial court reasonably found, and the record supports, that SHI was never a mere shell or a device used by Vik to conceal wrongdoing or to evade liability.").

### 2.    Norway Enforcement Efforts

In 2015, Mr. Vik transferred the shares he held in Confirmit to his father, Erik Martin Vik. *Deutsche Bank AG v. Vik*, No. FST-X08-CV-20-6047029-S, 2025 WL 1304820, at *4 (Conn. Super. Ct. Apr. 30, 2025) ("*Connecticut II*").

In April 2016, during the pendency of *Connecticut I*, the Oslo Court of Probate, Bankruptcy, and Enforcement held that the English Judgment against SHI was enforceable in Norway. ECF No. 37-10, at 3.[3] This holding was reviewed and affirmed by the Borgarting Court of Appeal and the Norwegian Supreme Court. *Id.* After DBAG registered the English Judgment, it sought to execute on the shares in Confirmit held by Erik Vik. In May 2016, the Execution and Enforcement Commissioner of the Enforcement Office in Oslo granted DBAG an enforcement lien on the Confirmit shares. Erik Vik appealed this ruling and the Oslo Court of Probate, Bankruptcy, and Enforcement dismissed Erik Vik's appeal. ECF No. 37-10, at 3.

---

[2] The Court also rejected DBAG's attempt to domesticate the English Judgment and enforce it against Mr. Vik, concluding that the "applicable law to determine if the domesticated English Judgment against SHI should be enforced against Mr. Vik is the same law relating to veil piercing as articulated and applied with respect to the first cause of action." *Connecticut I*, 2021 WL 4482154, at *32.

[3] I cite throughout to the pagination set by ECF rather than any page numbers appearing on the parties' briefs or exhibits.

The Borgarting Court of Appeal later upheld this execution lien. *Id.* at 4.[4] The Norwegian Supreme Court dismissed Erik Vik's appeal of this order on May 24, 2019. *Id.*

On May 28, 2019, more than two years before the Superior Court issued its judgment in *Connecticut I*, DBAG applied to the Oslo Execution and Enforcement Office for leave to conduct an "enforced sale" of the Confirmit shares in partial satisfaction of the English Judgment. Am. Compl. ¶ 35. That sale went forward in February 2020. ECF No. 37-12, at 2-4. As will be discussed below, the circumstances leading up to the sale led to further litigation. Am. Compl. ¶ 53.

### 3. *Connecticut II*

DBAG filed a second action in Connecticut Superior Court in June 2020. In the two-count complaint, DBAG asserted that Mr. Vik and Ms. Vik (1) tortiously interfered with its business expectations and (2) violated the Connecticut Unfair Trade Practices Act (CUTPA) by interfering in the sale of the Confirmit shares. *Connecticut II*, 2025 WL 1304820, at *4-5. The Superior Court noted that DBAG's allegations in *Connecticut II* "arise[] from Deutsche Bank's long-running attempt to collect on amounts owed to it by non-party [SHI]." *Id.* at *4. In particular, the complaint in *Connecticut II* alleged that Mr. Vik engaged in the wrongful transfer of assets from 2008 to 2015, improperly delayed DBAG's efforts to execute on the Confirmit shares in Norway, and interfered with the sale of the Confirmit shares. *Id.* at *4-5.

---

[4] Neither Alexander Vik nor Caroline Vik was a party to these proceedings. Mr. Vik's father, Erik Vik, was a party to the enforcement action. ECF No. 37-9, at 2-3. Ms. Vik contends that the Enforcement Office's decision to allow the lien "was based on a preliminary assessment of the ownership of the shares," Am. Compl. ¶ 32, and maintains that "[n]o judicial authority in Norway ruled with binding effect that [Mr.] Vik was not the owner of the Confirmit shares," *id.* DBAG disputes this characterization. Def.'s Mem. re MTD 10.

On April 30, 2025, the Superior Court (the Honorable Sheila A. Ozalis) granted summary judgment to the Viks. *Connecticut II*, 2025 WL 1304820, at *11-12. The Superior Court determined that the doctrine of claim preclusion (res judicata) barred DBAG from recovering on its claims related to the sale of the Confirmit shares because those claims arose from the same transaction as *Connecticut I*: the "enforcement of the English Judgment and transfer of shares of Confirmit." *Id.* at *7. The Superior Court also concluded that the doctrine of issue preclusion (collateral estoppel) prevented DBAG from relitigating the following issues:

> (1) the personal liability of Mr. Vik to DBAG under the English Judgment and the enforceability of the English Judgment against him; (2) whether the transfer of SHI's assets, including the transfer of shares of Confirmit to Mr. Vik in October 2008 was proper and valid; and (3) that Mr. Vik was the owner of the Confirmit shares in October 2008.

*Id.* at *11.

DBAG appealed the judgment of the Superior Court in *Connecticut II* to the Connecticut Appellate Court. *Deutsche Bank AG v. Vik*, No. AC-48622 (Conn. App. Ct.). The parties have submitted opening, response, and reply briefs to the Appellate Court. *Id.*

### 4.    Norway Action

In 2022, two years after filing *Connecticut II* in Connecticut Superior Court, DBAG also sought relief in Norwegian courts against Mr. Vik, Ms. Vik, SHI, and VBI Corporation (a company owned by Erik Vik). ECF No. 37-13, at 1.[5] The complaint in the Norway Action, filed in Oslo District Court, asserts that the defendants "actively and unlawfully counteracted

---

[5] Erik Vik had passed away by 2022 and the complaint notes a question of whether his estate will be added to the case. ECF No. 37-13, at 5. Counsel for Ms. Vik noted at oral argument that SHI and VBI have since been dropped from the Norway Action. Tr. 13.

and delayed the forced sale" of the Confirmit shares. ECF No. 37-13, at 4-5. The complaint accuses defendants of committing a "series of liability-inducing acts" and states that defendants are "liable pursuant to ordinary non-statutory liability in negligence." *Id.* at 20.

Ms. Vik asserts that the claims raised in the Norway Action are the same as those that were asserted in *Connecticut II*. Am. Compl. ¶ 48. Notwithstanding the Superior Court's determination in *Connecticut II*, the Norway Action has proceeded apace. *Id*. ¶ 54. Although the Viks urged the Oslo District Court to dismiss the Norway Action based on the findings in *Connecticut I* that Mr. Vik did not act improperly in transferring assets in October 2008, the Oslo District Court found that the *Connecticut I* Judgment "does not have legal force in Norway." ECF No. 42-8, at 7.[6] The Borgarting Court of Appeal affirmed this holding. *Id.* at 10.

The Norway Action is scheduled for trial in January 2026. ECF No. 42-8, at 1.

### B.    Procedural History

Ms. Vik, Mr. Vik, and DBAG have litigated numerous disputes in at least five jurisdictions (the United Kingdom, Norway, Connecticut state courts, New York state court,

---

[6] The Oslo District Court declined to give legal effect to the *Connecticut I* Judgment pursuant to Norway's Dispute Act. The Dispute Act recognizes international civil judgments only where the civil judgment was issued in a country that has agreed with Norway to recognize civil judgments or where "jurisdiction has been agreed . . . for a specific lawsuit or for lawsuits arising out of a specific legal relationship." ECF No. 42-8, at 5. The Oslo District Court held that the *Connecticut I* Judgment would have legal effect in Norway only if it were demonstrated that the parties had agreed to jurisdiction in Connecticut in advance of those proceedings. The Court declined to give legal effect to the *Connecticut I* Judgment because it found that there was no evidence of a written agreement to resolve the dispute in Connecticut. *Id.* at 5-7. The Borgarting Court of Appeal affirmed this analysis, holding that "it is clear that proceedings [in *Connecticut I*] were not brought on the basis of an agreement between the parties that Connecticut should be the jurisdiction for the subject matter." *Id.* at 10.

and federal district court) since 2013. I summarize here only the procedural history of the present action and the parallel action currently pending in Connecticut Superior Court.

### 1. District of Connecticut Proceedings

Ms. Vik and Mr. Vik initiated the present action by filing a complaint on July 21, 2025. Compl., ECF No. 1. The Viks moved for a temporary restraining order on July 31, 2025. Mot. for TRO, ECF No. 11. I convened a status conference on August 7, 2025. ECF No. 18. At the status conference, counsel for DBAG identified a potential defect in the pleadings that went to subject-matter jurisdiction. DBAG noted that the Complaint did not properly invoke federal question subject-matter jurisdiction and that the requirements for diversity were not satisfied because diversity is defeated where a non-U.S. citizen (Mr. Vik) sues a non-U.S. citizen (DBAG, a citizen of Germany for diversity purposes).[7]

I instructed the parties to confer on a proposed briefing schedule on (1) the Viks' motion for a TRO and (2) DBAG's anticipated motion to dismiss for lack of subject-matter jurisdiction. ECF No. 19. I adopted the briefing schedule proposed by the parties on August 12, 2025. ECF No. 23. On August 26, 2025, Mr. Vik filed a notice of voluntary dismissal. ECF No. 27. On August 27, 2025, the parties moved to modify the briefing schedule, and I granted this request on August 28, 2025. ECF No. 32.

On August 28, 2025, Ms. Vik amended the Complaint as of right, ECF No. 33, and filed an Amended Motion for a Temporary Restraining Order. Am. Mot. for TRO, ECF No. 34; Pl.'s Am. Mem. in Supp. of its Mot. for TRO ("Pl.'s TRO Mem."), ECF No. 34-1. Count

---

[7] *See Mazaya Trading Co. v. Li & Fung Ltd.*, 833 F. App'x 841, 843 (2d Cir. 2020) ("'[D]iversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens.'") (quoting *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

1 of the Amended Complaint seeks entry of an order enforcing and giving full faith and credit under 28 U.S.C. § 1738 to the judgment affirmed by the Connecticut Supreme Court in *Connecticut I* ("*Connecticut I* Judgment"). Am. Compl. ¶¶ 55-61. Count 2 seeks a permanent anti-suit injunction based on the *Connecticut I* Judgment preventing DBAG from proceeding with the Norway Action. *Id.* ¶¶ 62-74. Count 3 seeks a broader anti-suit injunction based on the *Connecticut I* Judgment that would prevent DBAG from seeking to enforce the English Judgment against Ms. Vik. *Id.* ¶¶ 75-82. The Amended Motion for a TRO requests that I issue a TRO that enjoins DBAG from continuing to prosecute the Norway Action, requires DBAG to advise me when the Norway Action has been stayed or withdrawn, and enjoins DBAG from enforcing the English Judgment against Ms. Vik. ECF No. 34, at 3.

DBAG responded in opposition to Ms. Vik's TRO briefing on September 10, 2025. Deutsche Bank AG's Mem. of L. in Opp. to Pl.'s Am. Mot. for a TRO ("Def.'s TRO Opp."), ECF No. 38. Ms. Vik replied to DBAG's opposition brief on September 24, 2025. Pl.'s Reply to Deutsche Bank AG's Opp. to the Mot. for TRO ("Pl.'s TRO Reply"), ECF No. 43.

In parallel with briefing on the TRO, DBAG filed a Motion to Dismiss on September 10, 2025. Deutsche Bank AG's Mot. to Dismiss the Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 37; Deutsche Bank AG's Mem. of L. in Supp. of its Mot. to Dismiss the Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def.'s MTD Mem."), ECF No. 37-1. Ms. Vik responded in opposition to DBAG's Motion to Dismiss on September 24, 2025. Pl.'s Opp. to Deutsche Bank AG's Mot. to Dismiss ("Pl.'s MTD Opp."), ECF No. 44. DBAG replied in support of its Motion to Dismiss on October 3, 2025. Deutsche Bank AG's Reply Mem. of L. in Further Supp. of its Mot. to Dismiss the Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6)

("Def.'s MTD Reply"), ECF No. 45. The parties agreed to defer all discovery pending my decision on the Amended Motion for a TRO and Motion to Dismiss. ECF No. 41.

I heard oral argument on November 5, 2025. ECF No. 54. At oral argument, Ms. Vik clarified that she is asking me only to enjoin DBAG from pursuing the Norway Action against her and not asking me to enjoin DBAG from pursuing the Norway Action with respect to Mr. Vik. Transcript of Oral Argument on Nov. 5, 2025 ("Tr.") 11-14, ECF No. 55.

### 2.    Current Connecticut Superior Court Proceedings

In its briefing, DBAG informed me that Ms. Vik and Mr. Vik filed a Complaint and Motion for a Temporary Injunction in Connecticut Superior Court on August 22, 2025—six days before Ms. Vik filed her Amended Complaint and Amended TRO request in this Court. *See* Def.'s TRO Opp. 8 n.1 (referencing *Vik v. Deutsche Bank, AG*, No. HHD-CV25-6211495-S (Conn. Super. Ct. Aug. 22, 2025), Dkt. Nos. 100.31, 100.36). The Viks' four-count Complaint in Connecticut Superior Court brings four interrelated claims: (1) a request for a permanent anti-suit injunction based on the *Connecticut I* Judgment to prevent DBAG from proceeding with the claims asserted in the Norway action; (2) a request for an injunction on the *Connecticut I* Judgment that prevents DBAG from continuing to enforce the English Judgment against the Viks; (3) a common law conversion claim seeking an injunction prohibiting DBAG from continuing to litigate the Norway Action on the theory that DBAG is wrongfully exercising control over the Confirmit shares; and (4) a common law unjust enrichment claim seeking damages on the grounds that DBAG is wrongfully retaining the proceeds from the sale of Confirmit shares. *Id.*, Dkt. No. 100.31, ¶¶ 57-97. The Viks' Motion for a Temporary Restraining Order seeks an injunction tied to counts 1-3 of the Complaint. *Id.*, Dkt. No. 100.36. The proposed Temporary Injunction would enjoin DBAG from (1) pursuing

"duplicative and vexatious litigation in Norway," (2) "seeking to enforce the English Judgment . . . against the Viks or otherwise claiming that they are personally liable under the English Judgment," and (3) "converting A Vik's property rights in shares of Confirmit . . . to pursue legal remedies." *Id.* at 1-2.

The Superior Court conducted a scheduling conference with the parties on October 10, 2025. *See id.*, Dkt. No. 111.86. DBAG filed a response in opposition to the Viks' Motion for a Temporary Injunction on October 16, 2025. *Id.*, Dkt. No. 118.00. The Viks replied in support of their Motion on October 30, 2025. *Id.*, Dkt. No. 123.00. On October 16, 2025, DBAG filed a Motion to Strike and supporting memorandum of law together with a Motion to Dismiss and memorandum of law. *Id.*, Dkt. Nos. 113.00, 114.00, 120.00, 121.00.[8] The Viks responded in opposition to DBAG's Motion to Strike on October 30, 2025. *Id.*, Dkt. No. 130. DBAG replied in support of its Motion to Strike on November 10, 2025. *Id.*, Dkt. No. 126.00.

The Superior Court is scheduled to conduct a hearing on November 13, 2025.

## II.    <u>ANALYSIS</u>

The Amended Complaint in the present federal action asks that I give full faith and credit to the *Connecticut I* Judgment and then issue an injunction to protect that judgment. Am. Compl. ¶¶ 55-61. Ms. Vik points to a body of case law that federal courts apply in considering whether to issue an anti-suit injunction to protect a *federal court* judgment or an ongoing *federal* proceeding. *See, e.g.*, *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi*

---

[8] The Motion to Dismiss is directed at only Counts Three and Four of the Complaint. *Vik v. Deutsche Bank, AG*, No. HHD-CV25-6211495-S (Conn. Super. Ct. Aug. 22, 2025), Dkt. Nos. 113.00, 114.00.

*Negara*, 500 F.3d 111 (2d Cir. 2007). But as DBAG asserted in its briefing—and Ms. Vik conceded at argument—the parties have not identified any prior case where a federal court issued an anti-suit injunction to protect a state-court judgment. Def.'s Mem. re MTD 13; Tr. 31. In contrast, there appears to be no barrier preventing the court that issued the *Connecticut I* Judgment—the Connecticut Superior Court—from issuing an anti-suit injunction if it deems it appropriate to do so.

Furthermore, I can grant only partial relief regarding the Norway Action. That is because counsel for Ms. Vik clarified at oral argument that any injunction I were to issue would apply only to Ms. Vik, and that DBAG would still be able to pursue their claims in Norway against Mr. Vik. Tr. 14. Counsel explained that Mr. Vik, the "primary target" of DBAG's enforcement efforts, would be protected only by an injunction issued by the Superior Court. Tr. 11.

I therefore begin by analyzing whether, pursuant to the doctrine of *Colorado River* abstention, I should abstain from ruling because of the parallel proceedings in Connecticut Superior Court. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

### A.    *Colorado River* Abstention

*Colorado River* abstention concerns one of the highly limited circumstances where "a federal court may abstain from exercising jurisdiction." *Niagara Mohawk Power Corp. v. Hudston River-Black River Reg. Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). Neither party has moved for dismissal on *Colorado River* grounds. Nonetheless, I may consider the issue sua sponte. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976); *Braid v. Stilley*, 142 F.4th 956, 969 (7th Cir. 2025) (asserting that "we may consider [*Colorado River*] abstention—and the

full scope of arguments counseling in favor of its application—on our own volition"); *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 n.4 (1st Cir. 2010) (same). Furthermore, my questions at oral argument focused on whether it was appropriate for me to decide this dispute in light of parallel proceedings in Superior Court. *See, e.g.*, Tr. 36, 38.

Federal courts have a "virtually unflagging obligation" to decide the cases within their statutorily defined jurisdiction. *Colorado River*, 424 U.S. at 817. Nonetheless, in certain "exceptional circumstances" a court may abstain from deciding cases otherwise within its jurisdiction based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*

"To exercise *Colorado River* abstention, a district court must first establish the prerequisite conditions: that there are 'concurrent' and 'parallel' proceedings." *Brown v. Carrington Mortg. Servs.*, No. 3:25-CV-50 (SVN), 2025 WL 2783593, at *6 (D. Conn. Sept. 30, 2025) (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir.1998)). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (citation and internal quotation marks omitted). The parties agreed at oral argument that the case before me concerns the same issue as the suit proceeding in Superior Court. Tr. 6-7. My review of the Superior Court docket confirms that there is no request for relief currently before me in this action that is not also sought in Superior Court.[9] In addition, the parties before me—Ms. Vik and DBAG—are also before the Superior Court.

---

[9] Ms. Vik's counsel stated at oral argument that there is nothing requested in this action not also being requested in the Superior Court action. Tr. 6.

As I am satisfied this case is concurrent and parallel to the Superior Court action, I analyze whether this case satisfies the stringent test for abstention described by the Supreme Court. "To determine whether abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Vill. of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) ("*Moses Cone*")). These six factors include:

> (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Vill. of Westfield*, 170 F.3d at 121.

"No single factor is necessarily decisive . . . and the 'weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.'" *Id.* (quoting *Moses Cone*, 460 U.S. at 16). "Where a *Colorado River* factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (quoting *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). In conducting this analysis, I heed the Supreme Court's instruction that my purpose is not to identify "some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional circumstances,' the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses Cone*, 460 U.S. at 25-26 (emphasis in original; citation omitted).

### 1. Assumption of jurisdiction by either court over any res or property

Neither the Superior Court nor this court has assumed jurisdiction over any res or property. This factor therefore weighs against abstention.

### 2. The inconvenience of the federal forum

In *Colorado River*, the Supreme Court recognized that the 300-mile distance between the federal district court and state court hearing concurrent proceedings counseled in favor of abstention. 424 U.S. at 820. That same consideration is not present here. There is no appreciable difference for the parties or their counsel between appearing in federal district court in New Haven and the Connecticut Superior Court's Hartford division. This factor therefore weighs against abstention.

### 3. The avoidance of piecemeal litigation

"By far the most important factor driving *Colorado River* and its progeny is the clear federal policy of avoiding piecemeal adjudication." *Abe v. N.Y. Univ.*, No. 14-CV-9323 (RJS), 2016 WL 1275661, at *7 (S.D.N.Y. Mar. 30, 2016) (citation and internal quotation marks omitted). But because "any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment," such risks—standing alone—are rarely sufficient to counsel heavily in favor of abstention. *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 600 (S.D.N.Y. 2013) (citation and internal quotation marks omitted). Rather, this factor "is implicated where a failure to abstain may result in inconsistent dispositions that would breed additional litigation on assertions of claim and issue preclusion." *Riggi v. Charlie Rose Inc.*, 777 F. Supp. 3d 356, 365 (S.D.N.Y. 2025) (citation and internal quotation marks omitted). Similarly, the Second Circuit has recognized that abstention is more likely to be warranted where concurrent "lawsuits . . . pose[] a risk of inconsistent outcomes not preventable by

principles of res judicata and collateral estoppel." *Niagara Mohawk Power Corp.*, 673 F.3d at 102 (citation and internal quotation marks omitted). "The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties." *Woodford*, 239 F.3d at 524; *Abe,*, 2016 WL 1275661, at *7 ("[A]bstention under *Colorado River* is appropriate when the parties to the state and federal actions are not identical, thereby raising the possibility that the parties who are not bound by the prior judgment may cause inconsistent judgments in subsequent lawsuits."). Finally, abstention is more likely to be warranted where the "state proceedings are more comprehensive than the federal proceedings." *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989).

Both the Connecticut Superior Court and this court are simultaneously analyzing the same question of whether the Norway Action is inconsistent with the *Connecticut I* Judgment and whether to enjoin DBAG from pursuing it. But as I have noted, this federal action is distinct from the Superior Court litigation in that I cannot grant relief to Mr. Vik, who is the "primary target" of DBAG's enforcement efforts, whereas the Superior Court can. Thus, even if I were to issue an injunction to prevent DBAG from pursuing Ms. Vik in the Norway Action, that injunction would invariably produce additional litigation in the Superior Court regarding the extent to which my decision would bind the Superior Court as a result of preclusion doctrines.

Moreover, the fragmented nature of this action is especially problematic because ordinary principles of preclusion might not prevent inconsistent determinations as to whether to enjoin DBAG from pursuing the Norway Action. That is because the Connecticut state court may apply a different standard than I would apply to determine whether to issue an anti-suit

injunction. *Compare China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987), *with Advest Inc. v. Wachtel*, 235 Conn. 559, 563 (1995).

Under *China Trade*, a party seeking an anti-suit injunction in federal court must make threshold showings that "(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court would be dispositive of the enjoined action." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc*., 369 F.3d 645, 652 (2d Cir. 2004) (citing *China Trade*, 837 F.2d at 36). However, a court must then consider "whether the parallel litigation would: (1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; (4) prejudice other equitable considerations; or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment." *Karaha Bodas Co.*, 500 F.3d at 119 (cleaned up; citation and internal quotation marks omitted).

Thus, with respect to the parallel state and federal proceedings here, even were the doctrine of issue preclusion to ensure that whichever court reached a decision first would preclude the other court from determining whether *Connecticut I* is dispositive of the claims raised in the Norway Action, each court would be free to depart from the equitable analysis conducted by the other court.

The Viks seek an extraordinary remedy. An anti-suit injunction "effectively restricts the jurisdiction of the court of a foreign sovereign." *Paramedics*, 369 F.3d at 655 (quoting *China Trade*, 837 F.2d at 35). Thus, "respect for the foreign forum" commands that I exercise restraint before enjoining DBAG from pursuing the foreign litigation. *Paramedics*, 837 F.3d at 655. In the particular circumstances of this case, I find that principles of comity dictate that the scope of the Norway proceedings should be determined by *at most* two courts: the Oslo

District Court and the Connecticut Superior Court—the court that issued the judgment that the Viks seek to protect. *See id.* at 655 ("[C]ourts that contemplate this extreme measure [of an anti-suit injunction] often must reconcile the protection of their own jurisdiction with respect for the foreign forum."). Abstaining here—where the judgment is the state court's not the federal court's—diminishes "friction between state and federal courts," *De Cisneros*, 871 F.2d at 308, and furthers "respect for the foreign forum," *Paramedics,* 369 F.3d at 655.

In sum, I find that this factor weighs heavily in favor of abstention.

### 4.    The order in which jurisdiction was obtained

The next factor, the order in which jurisdiction was obtained, "does not turn exclusively on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" *Vill. of Westfield*, 170 F.3d at 122 (quoting *Moses Cone*, 460 U.S. at 21). The Superior Court action was filed one month after the case in federal court, but six days before Ms. Vik filed the Amended Complaint and Amended Motion for a TRO currently pending before me. In Superior Court, the parties have completed briefing on the Viks' Motion for a Temporary Injunction and DBAG's Motion to Strike. The parties are scheduled to appear for a hearing in Superior Court on November 13, 2025. *Vik et al v. Deutsche Bank AG*, HHD-CV25-6211495-S (Conn. Super. Ct. 2025). In both cases the parties have agreed not to take discovery pending resolution of their dispositive motions.

Although the proceedings in Superior Court are at the same stage as the action before me, I am mindful that "facial[] neutal[ity] . . . is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (citation and internal quotation marks omitted). Stated otherwise, as the state court action has not progressed meaningfully further than the action before me, this factor counsels against abstention.

### 5.    Whether state or federal law supplies the rule of decision

The next factor is "whether state or federal law provides the rule of decision on the merits." *Vill. of Westfield*, 170 F.3d at 124. Although "the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Id.*

This factor highlights the exceptional nature of this case. The Amended Complaint asserts no federal cause of action. In addition, although the Amended Complaint invokes the federal courts' diversity jurisdiction, it asserts no substantive state law cause of action. Rather, the Amended Complaint asks this Court to give full faith and credit to the *Connecticut I* Judgment and then issue an injunction to protect that judgment. This federal action, therefore, is not only parallel to state court litigation but entirely derivative of a state court judgment.

Connecticut has a greater interest than this Court in determining if the Norway Action threatens its own judgment. The Viks and DBAG have been engaged in litigation in Connecticut courts for the past twelve years. The Connecticut Superior Court issued the *Connecticut I* Judgment in 2021 with a 66-page decision following a five-day bench trial. The Connecticut Supreme Court affirmed in 2023. Thus, Connecticut courts have invested considerable time in achieving the finality of the *Connecticut I* Judgment.

In addition, Connecticut law regarding issue and claim preclusion would presumably govern my consideration of whether *Connecticut I* is "dispositive" of the Norway Action—

should I reach that stage of analysis.[10] The Connecticut Superior Court has already determined the preclusive effect of *Connecticut I* on claims brought by DBAG in *Connecticut II* regarding the Confirmit shares—claims that closely mirror the claims underlying the Norway Action. The Connecticut Appellate Court is currently considering an appeal of that decision.[11] Thus, Connecticut courts are not only more familiar with Connecticut law regarding issue and claim preclusion but have already considered whether *Connecticut I* precludes relitigating claims related to the Confirmit shares. Moreover, the Superior Court is simultaneously considering the exact issues raised here: whether the Norway Action is inconsistent with the *Connecticut I* Judgment and whether DBAG should be enjoined from pursuing it.

In sum, this derivative action filed in federal court asks me to apply Connecticut law to determine whether the Norway Action is inconsistent with a Connecticut Superior Court judgment that has been the subject of more than a decade of litigation in Connecticut state courts and to decide whether DBAG should be enjoined from pursuing the foreign litigation. The Connecticut courts are far more familiar with these parties and issues of Connecticut law, and are better positioned to determine if DBAG's pursuit of the Norway Action is "thumbing its nose at the Connecticut courts." Pl.'s TRO Mem. 1.

---

[10] The Amended Complaint says this federal action would be "dispositive of the claim in the Norway Action because DBAG is trying to use a Norwegian court to relitigate the same issues that the Connecticut Judgment already resolved and undo that court's final judgment." Am. Compl. ¶ 67. Ms. Vik asserts that whether this federal action is "dispositive" of the Norway Action such that an anti-suit injunction can issue in federal court, *see China Trade*, 837 F.2d at 36, depends on the preclusive effect of the *Connecticut I* Judgment on the Norway Action—a matter that Ms. Vik asserts should be determined by reference to Connecticut law regarding issue and claim preclusion. Pl.'s TRO Mem. 22.

[11] The Connecticut Supreme Court weighed in at an earlier stage of that case. *Deutsche Bank AG v. Vik*, 349 Conn. 120 (2024).

For these reasons, I conclude that this factor weighs heavily in favor of abstention.

> **6.    Whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction**

"In analyzing the sixth factor in the special circumstances test, federal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Vill. of Westfield*, 170 F.3d at 124 (quoting *Moses Cone*, 460 U.S. at 28).

I conclude that the Connecticut Superior Court provides a more than adequate forum to resolve the weighty issues raised in this litigation. The Superior Court's Complex Litigation docket has given prompt consideration to the parties' submissions and is scheduled to conduct a hearing in this matter in the coming days. Neither party has asserted that the federal court has some unique authority with respect to anti-suit injunctions that the Superior Court lacks. Thus, this factor counsels in favor of abstention.

> **7.    Exceptional Circumstances and the Weighing of the *Colorado River* Factors**

In sum, I have concluded that factors (1), (2), and (4) counsel against abstention. Factors (3), (5), and (6) weigh in favor of abstention. Although the factors appear evenly split, I place greater weight on factors (3) and (5).

I conclude that abstention is warranted because of the "exceptional circumstances" raised in this case. In this action deriving from the Superior Court's judgment in *Connecticut I*, I am confronted with issues of state policy and state law—i.e., whether the Norway Action is inconsistent with the judgment from *Connecticut I* and whether DBAG should be stopped from pursuing it. The action before me raises the apparently novel issue of whether a federal court can issue an anti-suit injunction to protect a state-court judgment. In contrast, with

respect to the parallel state court action that has a hearing scheduled for November 13, 2025: (1) the Superior Court is being asked to issue an injunction to protect its *own* judgment and (2) the Superior Court is able to issue a more comprehensive form of relief because it is considering the request for relief from both Mr. Vik and Ms. Vik, whereas I can grant relief only to Ms. Vik.

Were I to rule before the Superior Court, my decision could limit the Superior Court without the benefit of avoiding piecemeal litigation. As noted, this federal case is purely derivative of the judgment in *Connecticut I*. Connecticut's courts have a greater interest in determining whether the Norway Action is inconsistent with the *Connecticut I* Judgment. Connecticut courts are also better positioned to weigh whether the Norway Action threatens Connecticut's public policy and whether equity supports the issuance of an injunction. These circumstances make this case "exceptional" and warrant abstention by the federal court here.

"[T]he *Colorado River* exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate." *Abe*, 2016 WL 1275661, at *10 (citing *Moses Cone*, 460 U.S. at 28; *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 n.1 (2d Cir. 1986)). Some circuits have instructed that a stay is preferred. *See Klein v. Huseby*, 129 F.3d 1267, 1268 (7th Cir. 1997) (noting that a stay is preferred because it "eliminates the risk that the federal action will be time-barred from reinstatement in the event the state proceeding does not result in a final decision on the merits, and a stay permits the same judge to determine the preclusive effects of the state judgment or decisions, if necessary"). I therefore order that the action is STAYED.

**III.    <u>CONCLUSION</u>**

Plaintiff's Motion for a TRO and Defendant's Motion to Dismiss are denied without prejudice. The case is STAYED. The parties shall file a joint notice within seven days of a determination in the Superior Court as to the Viks' request for a Temporary Injunction.

**SO ORDERED.**

New Haven, Connecticut
November 12, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge